

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: April 28, 2010**

_____
**JOHN C. AKARD
UNITED STATES BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 09-11859 |
| | § | |
| JOSEPH LYNN WEASTER and | § | Chapter 13 |
| KIMBERLY SUE WEASTER, | § | |
|     Debtors. | § | |

### MEMORANDUM AND JUDGMENT ON MOTION FOR ATTORNEYS' FEES BY BARCLAYS CAPITAL REAL ESTATE, INC.

    Barclays Capital Real Estate, Inc. d/b/a HomEq Servicing (the "Creditor") filed a motion for attorneys' fees in connection with the objection to the Creditor's claim filed by Joseph Lynn Weaster and Kimberly Sue Weaster (the "Debtors"). The court finds that the Creditor is entitled to a judgment against Mr. Weaster for $5,000.

#### FACTS

    On March 14, 2005, the Debtors executed a promissory note in the amount of $113,584 payable to Finance America, LLC with interest at 9.015% per annum in monthly installments of $1,153.06 (Creditor's Exhibit 1; the "Note"). The Note is secured by a Texas Home Equity Security Interest granting a first lien on their home at 3209 White Post Road, Cedar Park, Texas (Creditor's Exhibit 2; the "Security Interest"). The Security Interest provides that in addition to the monthly payments for principal and interest, the Debtors are required to make a monthly deposit for taxes and insurance on the property. In the event of default, the Noteholder is entitled to recover the costs and expenses of enforcing the Note, including attorneys' fees pursuant to paragraph 6(E) of the Note and paragraph 13 of the Security Interest. Paragraph 6(A) of the Note provides that for any payment more than 15 days past due, a late charge of 5% of the overdue

principal and interest will be assessed. The Debtors do not contest that the Creditor is the collection agent for the current holder of the Note and Security Interest.

Mr. Weaster operated his own construction company for 17 years, until he was diagnosed with cancer in March 2009. Because of the reduction of income, the Debtors fell behind in their payments to the Creditor. The Creditor accelerated the note and filed to foreclose on the property in the 368th Judicial District Court of Williamson County, Texas on June 19, 2009. The Debtors filed for relief under Chapter 13 of the Bankruptcy Code on July 6, 2009. In their schedules, the Debtors valued the property at $155,055 subject to a lien of $96,062 (Creditor's Exhibit 5). The value is the same as 2009 value by the Williamson County Appraisal District (Creditor's Exhibit 4).

On August 9, 2010, the Debtors filed a Chapter 13 Plan in which they listed the arrearage to the Creditor at $9,297.24 (Creditor's Exhibit 7). On September 17, 2010, the Creditor filed an objection to confirmation in which it asserted the delinquency was $14,068.07 (Creditor's Exhibit 8). The objection did not give any information on how the delinquency was calculated. On October 23, 2009, the Creditor filed its Proof of Claim, in which it asserted a debt of $107,252.71, including a delinquency of $14,068.07 (Creditor's Exhibit 19). The Proof of Claim contained a detailed breakdown of the calculation of the claim and the delinquency. Included in the delinquency is a $4,161.14 "escrow shortage." There is no explanation of the escrow shortage.

The Proof of Claim stated: "Next Post Petition Payment Amount: $1,153.06." That is the amount of the principal and interest payments stated in the Note. There is no explanation (1) if that is just a recitation of the principal and interest payment, (2) whether the escrow for taxes and insurance is to be paid in addition to that amount, or (3) if the tax and insurance escrow is not going to be collected, the reason for that change from the terms of the Security Interest.

On September 29, 2010, a paralegal in the office of the attorney for the Creditor sent to the attorney for the Debtors a facsimile containing 16 pages (Creditor's Exhibit 18). The first page of this communication stated, in part:

> As we discussed in our telephone conversation, Homeq Servicing's Proof of Claim includes escrow shortage of $4,061.14, which represents the recently disbursed hazard insurance premium in the amount of $1,127.00, the anticipated 2009 ad valorem taxes, as well as the required beginning balance needed to enable Homeq to pay the hazard insurance premium due in early 2010.
>
> Debtors' monthly post-petition payments are currently due in the amount of $1,153.06/month, which represents principal and interest only. Beginning with the payment due on January 10, 2010, Debtors post-petition monthly payment amounts will also include escrow. Please refer to the attached escrow analysis statement dated July 17, 2009, for further details.

2

The Docket in this case (Creditor's Exhibit 6) reflects that the Hearing on Confirmation of the Debtors' Plan was continued from October 27, 2009 to December 15, 2009. At the December hearing, Confirmation of the Debtors' Plan was denied and the Debtors were given 60 days to amend their plan.

Mr. Weaster sent to HomEq Servicing a 15-page document in which he requested a detailed explanation of various charges to this account from 2005 through November 2009 (Creditor's Exhibit 16; the "Document"). The Document is dated December 4, 2009, but the date from the fax machine shows January 4, 2010. The evidence did not explain this discrepancy.

In the Document, Mr. Weaster also asked for an explanation of why the IRS Forms 1098 [which he had apparently received] for the years 2005 through 2008 showed late charges totaling $1,556.55, which differed from the HomEq Payment History which apparently showed late charges for the same years, totaling $2,934.73.

Under the heading "Most Importantly" Mr. Weaster made 14 additional requests of HomEq:

1. Explain why there was no money disbursed from the last six months of payments to the escrow account?

2. When you applied the payments for months prior to filing for Bankruptcy?

3. At what point did our original Document "HUD 1" become null and void?

4. Explain Texas law that allows for suspension of escrow during Bankruptcy?

5. Date foreclosure was filed?

6. Where does it show in "HomEq Payment History" the balance of a "suspense account".

7. On separate spreadsheet show amount applied to "suspense account" and dates disbursed? How was this money allocated?

8. Provide a legal copy of any appraisal done on the property during this period. The name of appraisal company and license #.

9. Provide a legal copy of any inspections or inspection reports done on this property during this period. The name of the inspector and license #.

10. Please further supply a detailed explanation for the denial of loan modification applied for in May of 2009. ("failed modification financial guidelines") Detailed explanation of this statement. Mathematical formulation?

3

11. Provide all internet financial information supplied in applying for the modification. This is to include any and all information supplied by me or my wife in preparing this modification application.

12. Supply the name of loan holder. Was the holder incompliance with federal loan modification guidelines set at that time (3/31/09)? If not, is loan holder currently in compliance with federal mandated "H.A.R.P." guidelines? Date that "H.A.R.P." guidelines were implemented?

13. Provide all phone records from 12/31/08 thru 12/31/09. This will include all calls for collection, any calls recorded sent to homeowner, all calls you received and recorded by homeowner.

14. Any and all documents not listed above that have any relationship, addition to, relevance pertaining to, or legal interrelationship with Bankruptcy documents.[1]

On February 10, 2010, the Debtors filed an Amended Objection to the Claim of the Creditor (Docket #30 and Creditor's Exhibit 10; the "Amended Objection").[2] On February 15, 2010 the Creditor filed a response to the Amended Objection in which the Creditor counterclaimed and requested affirmative relief:

> **12.** Creditor asserts that Debtors should be compelled to reimburse Creditor for any legal fees and expenses incurred in connection with Creditor's defense of its Proof of Claim in the event that the Objection is withdrawn or determined not to be substantially justified.

(Docket #36 and Creditor's Exhibit 13 at p. 3).

By letter dated February 17, 2010 (Creditor's Exhibit 17), HomEq Servicing responded in detail to Mr. Weaster's Document. The response contained a great deal of information about the account, but did not furnish all the documents Mr. Weaster wanted.

In correspondence dated March 12, 2010, the attorney for the Creditor furnished additional information related to the Debtors' obligations to the Creditor (Creditor's Exhibit 21).

A hearing on the Amended Objection was set for March 16, 2010 but was continued to April 26, 2010 (Docket items 39 and 41). On April 12, 2010, the Debtors withdrew the Amended Objection (Docket #50 and Creditor's Exhibit 14).

On April 12, 2010, the Debtors filed their Second Amended Chapter 13 Plan (Docket #52 and Creditor's Exhibit 15). The amended plan calls for monthly payments to the Creditor in the

---

[1] In the original, these requests were all in bold capital letters.
[2] An objection to the claim of the creditor had been filed on January 26, 2010 (Docket #27) but withdrawn by the Debtors' February 9, 2010 notation that it had been docketed in error (Docket #28). That objection was declared moot by order dated February 11, 2010 (Docket #31).

4

amount of $1,493.53 on the continuing Note obligation and the arrearage of $14,068.07 to be paid pro rata with the other secured creditors.

A hearing on the Creditor's counterclaim was held on April 26, 2010. At the hearing the Creditor requested $7,051.05 in attorneys' fees and costs from September 16, 2009 through the trial of this matter (Creditor's Exhibit 24).

Apparently Mr. Weaster has recovered sufficiently from his illness that he is able to work at his construction company. An amended Schedule I – Current Income of Individual Debtor(s) which was filed February 12, 2010 (Docket #33 and Creditor's Exhibit 12), shows that he has regular income from the operation of his business (Macadam Forbes) of $8,133.33 per month and that from her employment as a therapist by the University of Texas, Mrs. Weaster has net monthly take home pay of $2,609.51; giving them a total income of $12,292.81 per month. Schedule J -- Current Expenses of Individual Debtor(s) filed at the same time shows average monthly expenses of $10,742.84 (including $7,553.33 related to the business) for a net monthly income of $1,550.

There is some discrepancy between the Amended Schedules I and J and the Debtors' Second Amended Chapter 13 plan filed on April 26, 2010. The plan shows only $4,859.51 for current monthly income and $3,309.51 for current monthly expenses. However, both arrive at $1,550 for the amount available for the plan.

## DISCUSSION

Unfortunately, some lack of communication by the Creditor in the early stages of this case led to this matter being blown all out of proportion. The Creditor's failure to explain how the delinquency was calculated and in particular the inclusion of the escrow charges in the delinquency, probably triggered Mr. Weaster to challenge every aspect of the loan and its history.

The communication from the paralegal in the office of the Creditor's attorney on September 29, 2009 should have resolved the issues. However, Mr. Weaster did not accept that explanation and instructed his attorneys to contest the Creditor's claim at every turn. In addition, he embarked on an aggressive campaign to challenge most every charge in relation to this loan since its inception, including asking for material to which he was not entitled and much information which was in his possession or knowledge. Some of the items – such as the differences in the late charges shown on the reports to the Internal Revenue Service and those shown on the Creditor's records – were reasonable requests, but many others were not.

All of these actions required considerable time and effort on behalf of the Creditor's attorneys and under the Note and Security Instrument, the Creditor is entitled to be reimbursed. The court feels that the Creditor must bear some responsibility for failing to properly explain its delinquency claim during the early stages of this case. For these reasons, the court will award the Creditor $5,000 in attorneys' fees and expenses. The judgment will be only against Mr. Weaster because there is no evidence that Mrs. Weaster participated in the actions which lead to this judgment.

## JUDGMENT

It is therefore **ORDERED, ADJUDGED, AND DECREED** that the Creditor have a judgment against Mr. Weaster only, for the sum of $5,000 to be paid without interest as part of the Debtors' Chapter 13 case. Should any portion of that amount not be paid during this Chapter 13 case, the remaining balance shall become a lien on the property securing the Note and Security Interest, and such balance shall bear interest from the date of closing of the Chapter 13 case at the Federal Judgment Interest Rate in effect on the date of the closing of this Chapter 13 case.

It is further **ORDERED** that the Creditor take nothing against Mrs. Weaster.

# # # #